IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

WILLIE CLINTON, *et al.*                                   PLAINTIFFS

v.                          CASE NO. 2:20-CV-00106-BSM

CITY OF WEST MEMPHIS, ARKANSAS, *et al.*            DEFENDANTS

<u>ORDER</u>

Defendants' motion for summary judgment [Doc. No. 43] is granted because there is no genuine dispute that Ronald Clinton was driving toward officer Matt Presley, III, when Presley shot through his windshield and killed him. Presley's use of deadly force was therefore reasonable because he had probable cause to believe that Clinton posed an immediate threat of serious physical harm to him. *See Estate of Morgan v. Cook*, 686 F.3d 494, 497 (8th Cir. 2012). Consequently, plaintiffs' federal claims are dismissed with prejudice, and their remaining state law claims are dismissed without prejudice for lack of subject matter jurisdiction.

I. BACKGROUND

This is a tragic case involving a shoplifting incident that escalated into a dangerous high-speed chase and a fatal shooting on Interstate 40. The unfortunate sequence of events began when an employee at the West Memphis Walmart called 9-1-1 to report that a shoplifter had just left the store. Pls.' Resp. to Defs.' Facts ¶ 1, Doc. No. 51. Dispatch provided a description of the suspect (later determined to be Ronald Clinton) and his vehicle to police officers patrolling the area. *Id.* ¶ 2; *see also* Officer Matt Presley Dashcam at

0:08–0:10, Doc. No. 54.  Officer Jeff Shehan identified Clinton's vehicle and attempted to pull Clinton over on the eastbound service road parallel to the interstate.  *Id.* ¶ 4.  Clinton did not stop.  *Id.* ¶ 5.

Officers Matt Presley ("M. Presley") and Martin Gill were riding together ahead of Clinton, and attempted to disable Clinton's vehicle with stop sticks.  *Id.* ¶¶ 3, 6.  Clinton, however, avoided the stop sticks by cutting across a grass median and driving onto the interstate.  *Id.* ¶ 7.  Shehan pursued Clinton onto the interstate from behind, while M. Presley and Gill drove onto the interstate and positioned their vehicle in front of Clinton.  *Id.* ¶¶ 8–9.

The officers attempted a box maneuver to bring Clinton's vehicle to a stop.  *Id.* ¶¶ 10–11.  This is when officers surround a fleeing vehicle with their vehicles and then slowly come to a stop.  Officer Martin Gill Dep. at 16:21–25, 53:2–6, Doc. No. 45-2.  The officers were unsuccessful because Clinton sped around the front vehicle.  *Id.* ¶¶ 10–11.  The officers attempted a second box maneuver but were unsuccessful because Clinton again drove around the front vehicle on the passenger's side, nearly hitting Gill.  *Id.* ¶ 17; Gill Dep. at 62:6–15, Doc. No. 45-2.  Gill then entered Shehan's patrol vehicle.  Pls.' Resp. to Defs.' Facts ¶ 20.

Shehan, Gill, and M. Presley continued pursuing Clinton.  *Id.* ¶¶ 19–20.  A third patrol vehicle, driven by Captain James Presley ("J. Presley"), joined the pursuit.  *Id.* ¶¶ 24–25.  The three patrol vehicles attempted a third box maneuver and slowed Clinton's vehicle to a stop, but as officers exited their vehicles, Clinton drove through a gap between two of the patrol vehicles and continued fleeing down the interstate.  *Id.* ¶¶ 26–29.  The officers re-

entered their vehicles and continued pursuing Clinton.  *Id.* ¶¶ 31–33.

The officers then positioned their vehicles to attempt a fourth box maneuver, with J. Presley in front of Clinton, Shehan and Gill on Clinton's driver side, and M. Presley behind Clinton.  *Id.* ¶ 33.  As the officers executed the box maneuver, Clinton engaged his brakes and the back of his vehicle was struck by M. Presley.  *Id.* ¶ 34.  The impact caused Clinton's vehicle to spin around and come to a stop facing westward on the eastbound interstate, while M. Presley's vehicle stopped in the right lane facing eastward in relative close proximity to Clinton.  *Id.* ¶ 36; M. Presley Dashcam at 5:00–5:04.  M. Presley exited his vehicle on the driver's side and yelled, "Stop the fucking car!" and Clinton accelerated his vehicle in a westbound direction toward Presley.  Pls.' Resp. to Defs.' Facts ¶ 39; M. Presley Dashcam at 5:04–5:06.  M. Presley fired five shots at the front of Clinton's vehicle while moving to his left and out of Clinton's path.  Pls.' Resp. to Defs.' Facts ¶¶ 40–41; M. Presley Dashcam at 5:06–5:09.  One of the shots hit Clinton in the chest.  Pls.' Resp. to Defs.' Facts ¶¶ 45, 52. Clinton's vehicle continued traveling westbound in the eastbound lanes of the interstate for approximately 1,000 feet before crashing into a stopped tractor-trailer.  *Id.* ¶¶ 42–43.  Clinton died from the gunshot wound to his chest.

Plaintiffs, as co-personal representatives of Clinton's estate, are suing defendants for unlawful seizure and excessive force in violation of the Fourth and Fourteenth Amendments. *See* Compl., Doc. No. 1.  Plaintiffs allege that the constitutional violations were the result of a policy, practice, or custom of the City of West Memphis, and that the City ratified the

unconstitutional conduct, failed to train or supervise its officers, and was negligent in its hiring and retention decisions. *Id.* Finally, plaintiffs assert state law claims for wrongful death and intentional infliction of emotional distress. *Id.*

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in his pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. *Id.* All reasonable inferences must be drawn in a light most favorable to the nonmoving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## III. DISCUSSION

Defendants' motion for summary judgment is granted.

### A.   Unlawful Seizure

Summary judgment is granted on plaintiffs' unlawful seizure claim because the officers had probable cause to initiate a traffic stop on Clinton based on the report of shoplifting. *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Clinton

and his vehicle matched the description of the Walmart shoplifter and both were in the vicinity of the store soon-after the shoplifting report was made. Moreover, once Clinton fled, he likely committed a felony in the officers' presence, justifying further pursuit. *See* Ark. Code Ann. § 5-54-125(d)(2). For these reasons, plaintiffs' argument that defendants' pursuit of Clinton was constitutionally unreasonable because it was based on a misdemeanor and initiated without an arrest warrant or signed affidavit is unconvincing. Moreover, the officers' violation of the police department policy requiring them to obtain a signed affidavit before making a shoplifting arrest does not establish a constitutional violation. *See Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996).

B.     Excessive Force

Summary judgment is granted on plaintiffs' excessive force claim because the undisputed proof is that Clinton was driving toward M. Presley when Presley shot through his windshield and killed him.

Excessive force claims are analyzed under the Fourth Amendment's reasonableness standard, which requires courts to weigh the totality of the circumstances. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). The use of deadly force is reasonable "if an officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to officers or others." *Thompson v. Dill*, 930 F.3d 1008, 1013 (8th Cir. 2019) (quoting *Morgan*, 686 F.3d at 497).

In his deposition, M. Presley testifies that after Clinton's vehicle spun out and was

5

facing westward, Presley exited his patrol vehicle and was looking directly into Clinton's windshield from about ten feet away when Clinton began accelerating. Officer M. Presley Dep. at 34:19–35:3, Doc. No. 45-3. M. Presley states that he then fired into Clinton's vehicle while running to his left away from Clinton's vehicle. *Id*. at 35:5–9. In his deposition, Gill testifies that he also exited his vehicle and saw Clinton accelerate directly toward M. Presley before Presley discharged his firearm. Gill Dep. at 78:18–79:5, 80:18–23, 79:19–80:5. He states that M. Presley and Clinton were "close," and that Presley "had to jump out of the way." *Id.* The driver of the tractor-trailer that Clinton crashed into gave a statement within minutes of the shooting, in which he asserts that "the car turned around the cops got out with guns out and he [Clinton] turned back East [sic] toward the cops...." Doc. No. 45-5 at 10.

In addition to the testimony, the photographs of the scene show four bullet holes in the front of Clinton's car—three in the windshield and one in the hood. Doc. No. 45-4 at 78–79. There is also dashcam footage from all three patrol vehicles. *See* Doc. No. 54. While none of the dashcams capture the shooting itself, M. Presley's dashcam clearly demonstrates that his vehicle was only a few feet from Clinton's when both were stopped, that Presley opened his car door before Clinton regained control of his own vehicle, and that Clinton began accelerating westbound before Presley yelled "Stop the fucking car!" and discharged five rounds. M. Presley Dashcam at 5:02–5:09.

Given this evidence, there is no genuine dispute that Clinton was driving toward M. Presley and posed an immediate threat of physical harm to him that justified the use of deadly

force.  Plaintiffs attempt to create a genuine dispute of fact by inserting images from other dashcam footage into their response brief that purport to show Clinton's vehicle further away from M. Presley's, such that Presley could not have been looking into Clinton's windshield or in front of Clinton's car when he began shooting.  Pls.' Resp. to Mot. Summ. J. at 13–16. These images, taken from a YouTube video appear to come from M. Presley's dashcam using the straight-on angle, as opposed to the wide-angle view that is in the record, as defendants explain in their reply.  *See* Doc. No. 55 at 4–5.  Regardless of their source, plaintiffs' images are not inconsistent with the record evidence showing M. Presley was in front of Clinton's car when the shots were fired, and no reasonable juror could find otherwise.  Without any evidence of a constitutional violation, M. Presley and the other officers are entitled to qualified immunity.  *Pearson v. Callahan.*, 555 U.S. 223, 232 (2009).

Even if there were a genuine dispute about the risk of serious physical harm to M. Presley, summary judgment would still be appropriate based on the risk of harm Clinton presented to other motorists.  This is true because Clinton, in his attempt to flee from the police, was weaving through busy Interstate 40 traffic at a high rate of speed for at least four minutes.  Under these circumstances, M. Presley's use of deadly force was reasonable to protect other motorists from the risk of serious harm posed by Clinton.  *See Lankford v. City of Plumerville, Ark.*, 42 F.4th 918 (8th Cir. 2022); *Scott v. Harris*, 550 U.S. 372 (2007); *Plumhoff v. Rickard*, 572 U.S. 765 (2014).  The cases plaintiffs cite to argue that deadly force was not reasonable are primarily from other jurisdictions and are distinguishable in that there

7

was no irrefutable threat to officers or other motorists at the time deadly force was used.  No such argument can be made in this case given all that led up to the shooting, including the final moments when Clinton began to accelerate his vehicle in the opposite direction of interstate traffic.

      C.     <u>Claims Against the City</u>

Summary judgment is granted on plaintiffs' claims against the City because plaintiffs have failed to show any underlying constitutional violations.  *Sanders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).  Summary judgment is granted on plaintiffs' claims against the police officers and Chief Donald Oakes in their official capacities because those claims are essentially claims against the City.  *Veatch*, 627 F.3d at 1257 (suit against government officer in his official capacity is functionally equivalent to suit against the employing governmental entity).

      D.     <u>State Law Claims</u>

Plaintiffs' state law claims are dismissed without prejudice because subject matter jurisdiction does not lie in this court.  *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

## IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment [Doc. No. 43] is granted, and plaintiffs' lawsuit is dismissed.

IT IS SO ORDERED this 20th day of June, 2023.

_____
UNITED STATES DISTRICT JUDGE